FLORA I. LEAMAN, Appellee, v. C. H. WISE, Appellant.

**VENDOR AND PURCHASER**: Rescission—Nonnecessity to Prove Scienter. Scienter need not be proved, in order to effect a rescission for fraud.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

NOVEMBER 19, 1924.

ACTION in equity, for the rescission and cancellation of a contract for an exchange of properties, and to set aside a deed executed in pursuance of such contract, and for an accounting of rents and profits. Decree for plaintiff, as prayed. Defendant appeals.—*Affirmed.*

*J. B. Newman,* for appellant.

*Sager, Sweet & Edwards,* for appellee.

STEVENS, J.—This is an action in equity, to rescind a contract by the terms of which appellee agreed to, and later did, convey certain real estate in Iowa Falls to appellant in exchange for 400 shares of the capital stock of the Dart Truck & Tractor Corporation of Waterloo, Iowa, and to set aside and cancel the deed executed in pursuance of the said contract, and for an accounting of rents and profits. Fraud in the original transaction, consisting of certain alleged fraudulent misrepresentations as to the value and character of the stock, is alleged as a ground for the relief sought.

Appellant is an investment broker, located at Waterloo, and appellee is a widow, residing at Plainfield. The real property involved is a three-story brick building in Iowa Falls. At the time the transaction was had, it yielded an income from rents of $47.50 per month. The shares of stock were owned by one Stover, who was the secretary of the corporation, and were purchased by appellant from him after the contract for the exchange

of properties was executed. Appellant traded Stover some stock of the Corn Belt Packing Company of Dubuque and some cement machinery stock for the 400 shares of the Dart Truck & Tractor Corporation. The shares were issued directly to appellee.

The record presents the conflict in evidence usual in cases in which fraud is charged. It is often difficult to ascertain the truth from the direct testimony of the witnesses, and resort must be had to the circumstances surrounding the particular transaction. Appellee testified that she informed appellant that the rental from the building represented her sole income, and that she knew nothing of the value of corporate stock; that appellant stated and represented to her that the stock was, in fact, worth $15 per share, and would soon be advanced to $17.50, but that he would transfer the shares to her for $12.50; that it had yielded a dividend in 1919 of 20 per cent, the year prior to the trade; that the president of the corporation was a millionaire; and that future dividends were assured. Appellant denied emphatically that he represented that the stock had paid cash dividends, and asserted that all he said with reference to the payment of dividends in the future was that none would probably be paid for a time; that she would have to take her chances; and that he had no particular information as to the possible future advantages of the investment. The evidence shows that appellee and her daughter, a school-teacher, who resides with her, visited the plant in Waterloo in company with appellant; that they were introduced to Stover, and conducted about the premises by a representative of the corporation. Appellant testified that he advised appellee to make inquiry of numerous persons; but this is in part denied by her, and no outside investigation was attempted. Appellee was not informed that Stover was the owner of the stock which he proposed to trade to her. No cash dividend was ever paid to the holders of common stock; and while a 25 per cent dividend was declared, to be paid several months later,—20 per cent stock and 5 per cent cash,—the record leaves it in doubt as to whether the dividend or any part of it was ever paid. Perhaps a cash dividend was paid to a few of the preferred stockholders. The corporation manufactured trucks, tractors, and other machinery. The presi-

dent and principal stockholder died sometime during the night of May 19, 1920, and a receiver for the corporation was appointed the next day. Some testimony was introduced as to the value of the assets in the hands of the receiver, but it is not of a persuasive character. The financial condition of the corporation was evidently bad at the time the contract between the parties was executed. It had little credit at the bank. That the president must have been the principal financial reliance of the corporation is evidenced by the fact that its affairs were placed in the hands of a receiver within a few hours after his death. The brick building conveyed to appellant was of the substantial value of $5,000. $500 was paid in cash by appellant, in addition to the 400 shares of stock. We shall not go further into the record. We are satisfied that appellee received no substantial consideration for her property, and that, whether appellant knew of the practically worthless character of the stock or not at the time of the trade, the deed was properly canceled and set aside by the court. Proof of *scienter* was not necessary. *Maine v. Midland Inv. Co.*, 132 Iowa 272; *Noecker v. Wallingford*, 133 Iowa 605; *New York Brokerage Co. v. Wharton*, 143 Iowa 61; *Farnsworth v. Muscatine Produce & Ice Co.*, 161 Iowa 170; *Gray v. Bricker*, 182 Iowa 816; and *Gray v. La Plant*, 183 Iowa 844.

We are satisfied that the representations of appellant were more specific and emphatic than he remembers that they were, and that appellee, who knew nothing of stock transactions or of the business in which the corporation was engaged, was imposed upon. Whether intended by appellant or not, the effect of the interview of appellee and her daughter with the owner of the stock was to confirm what had previously been stated to them, rather than to enlighten them as to the true value of the stock or the advisability of entering into the contract. The court granted the prayer of appellee's petition, and a careful reading and analysis of the evidence satisfy us that a correct conclusion was arrived at. The representations which we believe the evidence shows were made by appellant were intended as representations of fact, and to induce her to enter into the contract.

*Rembe v. Ferguson,* 183 Iowa 29; *Nolan v. Fitzpatrick,* 186 Iowa 1226. The claim of laches is without merit.

The decree of the court below is—*Affirmed.*

Arthur, C. J., and Evans and Vermilion, JJ., concur.